BREAUX, C. J.
This is an action of partition. The petition for the partition was filed in August, 1908.
The heirs who sue for the partition are the issue of the late John Blank and Kunigunda, his widow.
Five of these heirs are plaintiffs, and the sixth heir, a brother, John Blank, is defendant
The latter was adjudged a bankrupt, and in 1906 the German-American Savings Bank & Trust Company was appointed trustee of his estate.
The father of John Blank died some time prior to the latter’s bankruptcy, and the mother died after he had been adjudged a bankrupt.
The trustee and the bankrupt were made defendants.
A judgment is prayed for against the bankrupt, but no judgment is prayed for against the trustee.
Plaintiffs in their petition stated that John Blank, the son, has received his share of his father’s estate in advance, made to him by his mother to be accounted for by him upon final settlement of the estate of his father; and that he, John Blank, in addition, has received from his mother advances exceeding $7,000, which he should collate in the mother’s succession.
John Blank filed no defense, and a default was entered and confirmed against him.
The trustee filed a general denial, and, answering further, averred that it, the GfermanAmerican Savings Bank, is vested with title to all the property of the bankrupt, John Blank, including his undivided interest in the estate of his father.
The trustee denied that John Blank was indebted to his father or -to the latter’s estate in any amount, and denied that any collation is due by it as trustee.
Three of the creditors of John Blank intervened and joined the trustee. They are the Southern Redistilling & Rectifying Company, the American Brewing Company, and Henry Block Company, Limited.
The judge of the district court in the first judgment reserved all questions of collation, either to the father’s or mother’s estate, to be considered later on final partition.
There is a question for decision relating to the case as instituted.
The heir, John Blank, was made party defendant, and judgment was asked for against him, but no judgment was asked for against the trustee, although he was made party defendant.
There was no exception filed against the *835 proceeding, and in the answer these defendants, particularly the trustee, met the issues on the merits.
The question presented can be disposed of without the necessity of rendering judgment against the trustee.
Contradictorily with him, the rights of parties can be fixed to the extent of finding that there is no necessity of placing him in possession of the inheritance of the bankrupt from his father’s succession in as much' as, owing to his having received at a time when he was sui juris an amount far in excess of the amount to which he was entitled in the succession.
When a trustee appears in a succession and demands an heir’s portion, it should be made to appear by him that the heir had something coming to him from the succession, the property of which it is proposed to partition.
In matter of the partition the court referred the parties to a notary as required to adjust and settle the respective rights of the heirs.
The share of each heir was fixed by the notary at $7,209.25 — one-half derived from the father’s, the other from the mother’s estate.
The notary referred hack to the court the question of the disposition to be made of the share of John Blank in his father’s and mother’s estate.
The plaintiffs in the partition filed a rule setting out that an act of partition had been executed before Eelix J. Dreyfous, notary.
That the share of John Blank has not been disposed of by said notary for the reasons stated in said act of partition, viz., that claims had been urged by the coheirs of said John Blank to collation due by him to his father’s and mother’s estate, and that the trustee claims an amount from his shara
The parties named in the rule as defendants were ordered to show cause why collation should not be made.
The district court on this rule, in accordance with judgment dated August 19, 1909, instructed the notary to complete the partition by distributing the share or portion of John Blank in the succession of his father and mother among the plaintiffs, the coheirs of John Blank.
It is not out of place to state here that at different times John Blank received amounts from his mother. The last sum received by him from her was $8,000.
John Blank testified that this money was given to him by his mother from the estate of his deceased father, and that is a conceded fact.
In her last will the mother declared that John Blank, her son, had received more than the amount to which he had a right from his father’s succession, and that he had received from her more than the amount to which he had a right, and that he had no right to anything more from their estates.
This declaration is fully sustained by the testimony of witnesses. No question but that he had received over and above the amount to which he had a right. That was made evident by-the testimony admitted with-but objection.
Counsel for the trustee Bank admitted that it had no concern in matter of collation to the mother’s estate because she died after the son’s surrender in bankruptcy, and the trustee has no right to property inherited after the surrender in bankruptcy.
These declarations are fully sustained by the weight of the testimony.
As relates to the father’s succession: The record discloses that he died about the year 1889. The last amount paid by the mother for the account of the father’s succession— that is, the $8,000 — was paid in 1904. The son, John Blank, was adjudged a bankrupt in 1906.
*837 It is true, as contended by learned counsel representing the trustee, that by the federal bankrupt law all the bankrupt’s property is vested in the trustee by operation of law. Section 70 of the statute (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]).
The bankrupt, John Blank, it follows could not make any disposition of the property of which he has been divested by the surrender. He was not divested of his inheritance in his father’s estate for he had been settled with years before.
While giving to that law the broadest scope, it remains that the trustee went into possession of the bankrupt’s estate in the condition in which it was at the date of the surrender, and that is all that he can expect under the bankruptcy law. He does not take property and acquire rights over and above those which the bankrupt had. In other words, he does not acquire additional right by the surrender.
The first point urged by the heirs — who are here plaintiffs and appellees — in the petition, is that John Blank should return to the succession of his father and mother the amounts he received, as before stated. This return was not originally claimed as a collation due by the heir; that is, in the first petition. Afterward, in the pleadings, the amount was mentioned by plaintiffs as an amount to be collated; i. e., its collation was claimed by the plaintiff heirs.
The issue of collation due vel non is before the court.
We now have to consider whether it is due as a collation, and, in the second place, if not due as a collation then whether the heir can be treated in the settlement of the father’s and mother’s succession as a debtor and charged with amounts received after the death of the father, but before the surrender in bankruptcy.
We only incidentally mention the mother’s succession. As to that succession, there is really no issue.
We now decide that the amounts paid are not to be considered as amounts to be collated.
The next inquiry is whether the trustee is precluded from claiming the inheritance in the father’s succession, not because there is no collation possible in these proceedings, but because the father died long before the surrender and the father’s succession had been settled.
Now, to return to the question of collation, there is no collation due because the amount paid by the mother was not an avancement d’hoirie, nor did this payment constitute or give rise to an indebtedness of the heir to his late father’s succession. It was a payment by the mother.
An heir who comes to a succession under the terms of the Civil Code and as authorized thereby must return to his coheirs all that which he has received from the common ancestor. He cannot retain anything donated unless he has a defense.
That is the interpretation given to article 1227. Flower and King v. Myrick, 49 La. Ann. 321, 21 South. 542.
This court said in the cited case:
“The mere definition of collation of the Civil Code, we think, is a complete answer to this proposition.
“The children or grandchildren must collate what they have received from their fathers, mothers, or grandparents.” Civ. Code, art. 1228.
In the case before us, we have noted the children had not received any donation for which they were accountable and owed no debts to their mother.
As a mere matter of collation, under the article of the Code relative to that subject, the heir could not be called upon to collate.
This relates exclusively to the question of collation.
We now pass to the relation from a business point of view between the late mother *839 of the bankrupt and the bankrupt: The mother survivor in community had the succession property in her possession.
She paid the amount to him.
The court would not be warranted in overlooking this payment. The proof of payment was made.
John Blank, as we read the evidence, importuned his mother for the amounts which she paid to him on the condition before mentioned. This payment was- made at a time not suspicious, a very considerable time before the son’s surrender in bankruptcy. It was made in good faith, and no one at any time has questioned the right to make the payment. The heir had the right to receive the amount from the father’s succession. It is not due as a collation, but it is a payment.
The heir was sui juris, and the statutes of bankruptcy do not release him from an obligation growing out of a payment. He and those who stand in his place cannot recover an inheritance which he has already collected.
The evidence of payment consists of a receipt issued at the time, the money was paid by the mother administering the succession as a survivor in community.
This court has decided that an heir could take his share in currency or in property of the succession if the heirs were competent to partition the property among themselves.
Two decisions were rendered. In each decision it is .expressly stated that effect will be given to a payment under circumstances similar in points to the case before us for decision. Boisse v. Dickson, 31 La. Ann. 754; Boisse v. Dickson, 32 La. Ann. 1150.
To resume before closing, the mother chose to advance an amount in payment of an heir’s share before it is ascertained precisely the amount to which the heir had a right. On final settlement it appears that she has not only paid him, but that she has overpaid him very much more than the amount to which he had a right.
There can no authority be found in law or jurisprudence that would sustain the proposition that, in face of the condition of the payment, she is a mere creditor and the heir continues in the ownership. Much less can it be held that creditors can intervene and have the payment considered as naught.
They cannot have the property brought to the mass of the estate of a bankrupt. It would be the merest form if it were brought to the mass for the bankrupt is very much indebted to both the succession of his father and his mother.
We will not discuss further the proposition from the point of view of the necessity of transferring the claim to the bankruptcy estate.
In addition to the fact that the creditors have no right to such a transfer, they have not asked for it in their answer to these proceedings.
For reasons assigned, the judgment appealed from is affirmed.