PRESENT: All the Justices

WILLIAM CALVIN FIREBAUGH,
CO-EXECUTOR OF THE ESTATE OF
MARTHA F. SOWERS, DECEASED, ET AL.

                                              OPINION BY
v.  Record No. 010934              JUSTICE DONALD W. LEMONS
                                            March 1, 2002

CHARLES F. WHITEHEAD, ET AL.

         FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
                  Duncan M. Byrd, Jr., Judge

     In this appeal, we consider whether Charles F. and Martha

A. Whitehead (collectively, "the Whiteheads") possess a valid

and enforceable right of first refusal to purchase property

owned by the estate of Martha F. Sowers ("Sowers").  We further

consider whether the right, if valid and enforceable, is binding

upon the co-executors of Sowers' estate, William C. Firebaugh

("Firebaugh") and Evelyn O. Carlson ("Carlson") (collectively,

"co-executors").

                I.  Facts and Proceedings Below

     On July 22, 1987, Sowers conveyed approximately 13.77 acres

of land by deed to the Whiteheads.  On August 7, 1987, Sowers

executed an agreement granting to the Whiteheads a right of

first refusal to purchase additional acres, which was

subsequently recorded in the Botetourt County Clerk's Office in

Deed Book 336, Page 539.  The agreement, in pertinent part,

granted the Whiteheads:

[A] first right of refusal to purchase certain parcels currently owned by [Sowers] lying on the northerly side of State Route 665 and designated as Tax Parcel #72-83 and Tax Parcel #72-53 and shown on that certain plat prepared by Charles R. McMurry, C.L.S. dated March 29, 1987, a copy of which is recorded in the Clerk's Office of the Circuit Court of Botetourt County, Virginia in Deed Book 336, Page 533.[1]

Sometime in the latter part of 1987 the Whiteheads moved from Virginia to Mississippi and did not notify Sowers that they were leaving the area.

Sowers died in 1993 and Firebaugh and Carlson qualified as co-executors of her estate. On April 22, 1993, the estate received an offer from the Botetourt Country Club, Inc. ("BCC") to purchase approximately 16.9 acres of property, including the property subject to the Whiteheads' right of first refusal, for $94,950.00. Firebaugh and Carlson conveyed the property by deed to BCC on May 21, 1993. The Whiteheads first learned of the sale to BCC in March 1994, when Claude Carter, BCC's attorney, called Mrs. Whitehead and notified her.

On November 20, 1995, the Whiteheads filed an amended bill of complaint against Firebaugh and Carlson, as co-executors of

---

[1] The recorded grant memorialized a prior unrecorded contract between the parties. The contract, dated May 21, 1987, granted the right of first refusal to two parcels "designated as Tax Parcel #72-93 and Tax Parcel #72-53 . . . ." The trial court dismissed with prejudice the part of the Whiteheads' suit referring to the property designated as Tax Parcel 72-83 in the deed.

2

the estate of Sowers, and against BCC.[2]  The Whiteheads alleged

that by failing to offer them the property subject to their

right of first refusal, the estate breached the agreement.  The

Whiteheads requested specific performance, asking the trial

court to order BCC to convey the property to the Whiteheads.

Alternatively, the Whiteheads requested monetary damages from

the co-executors.  In their answer, the co-executors claimed

that the agreement including the right of first refusal was

executed by Sowers individually, and could not be enforced

against the co-executors of Sowers' estate.

The trial court heard evidence and argument on July 1 and

2, 1997.  A large portion of the evidence and argument related

to whether the description of the land in the right of first

refusal was sufficient to render the right enforceable.  At

trial, Kirk Lumsden ("Lumsden") was qualified as an expert in

land surveying.  Lumsden testified that he was able to identify

the property subject to the right of first refusal by examining

the agreement containing the right, along with other documents

referenced in the agreement, including the plat prepared by

Charles McMurray.  Lumsden explained that he "did some

additional deed research for the properties that adjoin the tax

---

[2] The Whiteheads filed a bill of complaint against Firebaugh
and Carlson as co-executors, and BCC, on August 3, 1994.  The
procedural history leading up to the filing of the amended bill
of complaint is not relevant to this appeal.

parcels referenced [in the agreement], and used that to help identify the property." Lumsden testified in detail about the steps he took in order to identify the property subject to the right of first refusal. Lumsden was asked on cross-examination whether he could identify the property by looking at the agreement purporting to grant the right. Lumsden answered: "Not from the agreement, per se, but by pulling out the plat and taking information from the plat," he could identify the property.

In an opinion letter dated July 30, 1997, incorporated in an order entered November 5, 1997, the trial court ruled that the Whiteheads' right of first refusal was valid and enforceable. In the order of November 5, 1997, the trial court denied the Whiteheads' request for specific performance from BCC but permitted the Whiteheads to maintain their claim against the co-executors for damages.

On February 7, 2001, the trial court entered final judgment against the co-executors, jointly and severally in their capacity as co-executors, in the amount of $64,000, plus prejudgment interest from November 5, 1997, and postjudgment interest until the award was fully paid. Both the Whiteheads and the co-executors appealed the final order and we denied an appeal to the Whiteheads, but awarded an appeal to the co-executors.

4

The co-executors claim that the trial court erred in holding that the right of first refusal held by the Whiteheads was valid and enforceable, and that the trial court erred in holding that the agreement between Sowers and the Whiteheads was binding upon the co-executors.

## II.  Standard of Review

The issues in this appeal present questions of law; therefore, we review them under a de novo standard. Transcontinental Ins. Co. v. RBMW, Inc., 262 Va. 502, 514, 551 S.E.2d 313, 319 (2001).

## III.  Analysis

The co-executors assert that "the description of the land contained in the agreement [is] so vague and ambiguous as to make it nearly impossible to identify the land subject to the right of first refusal."  They further claim that the agreement lacks essential terms which render it invalid, specifically, provisions concerning notification of potential offers to the Whiteheads and details concerning the proper method of response of the holder of a first right of refusal.  Additionally, the co-executors argue that the agreement lacks a specified time period during which the right would remain valid, which they claim renders the agreement void as violating the rule against perpetuities and as an unlawful restraint against alienation. Finally, they maintain that even if the right of first refusal

5

is valid and enforceable, it is not binding upon them because the agreement was personal to Sowers.

The Whiteheads assert that the description of the property subject to the right of first refusal is sufficient because the property can be located with the aid of extrinsic evidence. They further argue that a right of first refusal need not include information about notification, provisions about how and when the holder must exercise the right, or a duration limitation of the right. Finally, the Whiteheads claim that Sowers' death did not terminate her contractual obligations; therefore, the co-executors are bound by the Whiteheads' right of first refusal. We agree with the Whiteheads.

In a deed conveying land or an interest in land, the main object of the description "is not in and of itself to identify the land sold . . . but to furnish the means of identification, and when this is done it is sufficient." Harper v. Wallerstein, 122 Va. 274, 278, 94 S.E. 781, 782 (1918) (citing Thorn v. Phares, 35 W. Va. 771, 782, 14 S.E. 399, 405 (1891)). The description of the subject property must be sufficient "to afford the means, with the aid of extrinsic evidence, of ascertaining with accuracy what is conveyed and where it is." Smith v. Bailey, 141 Va. 757, 768, 127 S.E. 89, 93 (1925) (citing Merritt v. Bunting, 107 Va. 174, 179, 57 S.E. 567, 568 (1907)). "The description need not be given with such

6

particularity as to make a resort to extrinsic evidence [unnecessary]." Pavlock v. Gallop, 207 Va. 989, 993, 154 S.E.2d 153, 156 (1967) (citing Grayson Lumber Co. v. Young, 118 Va. 122, 126, 86 S.E. 826, 827 (1915)).

In the present case, an expert in land surveying testified that the description in the agreement was sufficient to allow him to identify the subject property. He explained that he identified the property by looking at the agreement along with extrinsic evidence including land records and the plat referenced in the agreement. Accordingly, the description in the agreement satisfies the legal requirements for conveying or transferring an interest in land.

The co-executors also argue that the Whiteheads' right of first refusal lacks essential terms, including provisions about notification to the Whiteheads and details about how the Whiteheads were to respond. This Court addressed issues similar to these in Landa v. Century 21 Simmons & Co., 237 Va. 374, 377 S.E.2d 416 (1989).

In Landa, the contract at issue stated: "Purchaser to have first option on remaining tract. Notice must be in writing to 3018 Boulevard, Col. Hgts." Id. at 378, 377 S.E.2d at 418. Although called a "first option," we held that the right expressed was a right of first refusal. The trial court found the contractual provisions "incomplete and uncertain" because

7

they failed to define "the remaining tract," failed to specify the right's duration and whether the right survived settlement, and failed to set a price. Id. at 380, 377 S.E.2d at 419. In reversing the judgment of the trial court, we observed that a right of first refusal is included in a contract for the benefit of the person who is given the right and, therefore, must "be interpreted with that purpose in mind." Id. A right of first refusal limits a property owner's right "to dispose freely of his property by compelling him to offer it first to the party who has the first right to buy." Id. at 381, 377 S.E.2d at 420 (quoting 11 Samuel Williston, Williston on Contracts § 1441A (3d ed. 1968)); see also Cities Service Oil Co. v. Estes, 208 Va. 44, 47, 155 S.E.2d 59, 62 (1967). The nature of the right makes it unnecessary for the terms of a future offer to be known in advance. Landa, 237 Va. at 381, 377 S.E.2d at 420. Therefore, we held that the trial court erred in ruling that the right of first refusal was uncertain and indefinite because "the terms of the contract to be specifically enforced are determined from the offer whose terms the holder of the right of refusal agrees to meet." Id. at 383, 377 S.E.2d at 421. In this case, the deficiencies alleged by the co-executors are not fatal to the validity of the right of first refusal.

Additionally, the co-executors argue that the failure to specify duration "raises the possibility that the right of first

refusal is void as an unlawful restraint against alienation and violative of the Rule Against Perpetuities." In <u>Landa</u> we rejected the argument that failure to specify a duration for a right of first refusal invalidated the right. 237 Va. at 380, 377 S.E.2d at 419.

We have recognized that rights of first refusal are subject to the rule against perpetuities; therefore, a right is void ab initio if, at its creation, there is a possibility the right might not be exercised until after the expiration of the time period fixed by the rule, which is measured by a life or lives in being plus 21 years and 10 months. <u>Lake of the Woods Ass'n, Inc. v. McHugh</u>, 238 Va. 1, 4-5, 13, 380 S.E.2d 872, 873, 874-75 (1989); <u>United Virginia Bank v. Union Oil</u>, 214 Va. 48, 51, 197 S.E.2d 174, 177 (1973). The right of first refusal in the case before us was specifically granted to "Charles Whitehead and Martha A. Whitehead, or the survivor." The relevant lives in being at the time of the grant were Sowers and the Whiteheads, and the right vested at the time of the execution of the agreement.

Finally, the co-executors argue that the right of first refusal is invalid because there are no specific provisions for notice to the holders of the right and no specific requirements for a time to respond to the notice. The co-executors cite no cases in support of their argument and we can find none.

9

Additionally, when a contract does not provide a time within which a party must act, the law will imply a reasonable time within which to do so.  Merriman v. Cover, Drayton & Leonard, 104 Va. 428, 442, 51 S.E. 817, 821 (1905).

We hold that the Whiteheads' right of first refusal includes a sufficient description of the property and does not lack any essential terms.  Furthermore, the lack of a duration limitation does not violate the rule against perpetuities or create an unlawful restraint against alienation.  Accordingly, the Whiteheads' right of first refusal is valid and enforceable.

We must now decide whether the right is binding upon the co-executors of Sowers' estate.  In Looney v. Belcher, 169 Va. 160, 170-71, 192 S.E. 891, 895 (1937) we recognized:

> It is a presumption of law that the parties to a contract bind not only themselves but their personal representatives.  Executors, therefore, are held to be liable on all contracts of the testator which are broken in his lifetime, and, with the exception of contracts in which personal skill or taste is required, on all contracts broken after his death.

(Quoting United States v. Chain, 300 U.S. 31, 35 (1937)).

We examine the facts and circumstances of each particular case to determine whether a contract is purely personal in nature.  Moore v. Crutchfield, 136 Va. 20, 25, 116 S.E. 482, 483 (1923).  Contracts requiring artistic or mechanical skill, ability, or training are generally considered personal

10

contracts, where the death of the promisor results in discharge of the obligation.  14 Corbin on Contracts § 75.2 at 127 (James P. Nehf, ed. 2001).

In the present case, Sowers granted the Whiteheads an interest in land.  A contract granting an interest in land does not involve any special skills or training; thus, it does not have the characteristics of a personal contract and the death of the promisor does not discharge the obligation.  Therefore, Sowers' estate is bound by the contract which granted the Whiteheads their valid and enforceable right of first refusal.

Accordingly, we will affirm the judgment of the trial court.

<u>Affirmed.</u>